UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOVAN T MULL,

        Petitioner,

v.                                                           Case No. 23-cv-1638-bhl

BRADLEY MLODZIK,[1]

        Respondent.

## ORDER DENYING § 2254 HABEAS PETITION

    In April 2016, a Milwaukee County jury convicted Petitioner Jovan Mull of first-degree reckless homicide in connection with the fatal shooting of a young woman at a house party in Milwaukee. During his state court post-conviction proceedings, the Wisconsin Court of Appeals ruled that Mull was entitled to a new trial based on his trial counsel's alleged ineffectiveness, but the Wisconsin Supreme Court reversed that ruling, concluding that trial counsel's strategic decisions were reasonable, and, thus, Mull had not shown a constitutional violation. On habeas, Mull now asks this Court to side with the Wisconsin Court of Appeals and conclude that the Wisconsin Supreme Court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting his ineffective assistance claims was unreasonable. Because Mull has not overcome the high bar for challenging appointed counsel's strategic decisions, his petition will be denied.

## BACKGROUND[2]

    In the early morning hours of March 7, 2015, a fight broke out at a crowded house party in Milwaukee, Wisconsin. (ECF No. 8-9 ¶3; ECF No. 8-8 at 6.) As the fight escalated, Erika Walker, one of the home's residents, and several others took shelter in her bedroom. (ECF No. 8-9 ¶¶3–4.) Someone then fired multiple shots into the closed bedroom door, striking and killing Walker.

---

[1] Mull is currently incarcerated at Waupun Correctional Institution, where Bradley Mlodzik serves as Warden. Accordingly, Mlodzik is the proper Respondent for Mull's habeas petition and is automatically substituted as Respondent. *See* Rule 2(a) of the Rules Governing §2254 Petitions; *see also* Fed. R. Civ. P. 25(d).

[2] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. §2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.* The background facts are based on the Wisconsin Supreme Court's decision affirming Mull's conviction. (ECF No. 8-9); *see also State v. Mull*, 987 N.W.2d 707 (Wis. 2023).

(*Id.*) Police arrived after the shooting and took statements from more than twenty-five individuals present at the party. (*Id.* ¶5.) Eyewitnesses confirmed that the shooter was a black male who fired the gun with his right hand, but their descriptions varied widely concerning his height, build, hairstyle, and clothing. (*Id.* ¶¶5–6.) Based on the available evidence, including witness statements, the police initially focused their investigation on Mull and three other men: Vashawn Smyth, Menjuan Bankhead, and Tyler Harris. (*Id.* ¶¶7–11.) In the end, the State charged only Mull for Walker's murder and proceeded against him on charges of first-degree reckless homicide. (*Id.* ¶¶12–14.)

Mull's case was tried to a jury in April 2016. (*Id.* ¶15.) Among other witnesses, the State called the victim's former girlfriend, Cheyenne Pugh, to testify. (*Id.* ¶16.) Pugh was not present for the shooting but told the jury about her receipt of Facebook messages and photos (of Mull and another suspect) and how she shared that information with the police. (*Id.* ¶¶8, 16.) During Pugh's testimony on direct about her relaying messages implicating Smyth, defense counsel objected multiple times on both foundation and hearsay grounds but was overruled each time. (*Id.* ¶16.) Pugh further testified that others had told her that Mull was the shooter, that she had received a photo of Mull on Facebook, and that she provided investigators with this information. (*Id.*) On cross-examination, Pugh confirmed that she did not know the people who sent her the messages and photos. (*Id.* ¶17.) Counsel attempted to clarify Pugh's responses, which included references to unnamed third parties. (*Id.* ¶17.) Pugh responded to counsel's question and then stated that a third party told her that Mull had been bragging that he "killed the stud bitch." (*Id.*) Having had his previous hearsay objections overruled, Mull's counsel did not move to strike this testimony on hearsay grounds, nor did he move for a mistrial. (*Id.*) Instead, counsel elected not to highlight the matter further and pivoted to questioning Pugh on her relationship to the investigation. (*Id.*)

The jury also heard testimony from other witnesses, several of whom implicated Mull. Smyth (one of the previous suspects) testified that he saw Mull and another one of the suspects, Harris, with guns in the living room. (*Id.* ¶18.) Smyth testified that he did not see Mull fire a gun but heard the shots fired. (*Id.*) Another witness testified that Mull rode in a vehicle with him after the party and told him, "You better not say anything. I know your faces." (*Id.* ¶19.) He further speculated that Mull was probably the person who killed Walker. (*Id.*) The prosecution also introduced two witnesses' prior out-of-court identifications of Mull as the shooter (although one of the witnesses recanted his identification of Mull on the stand). (*Id.* ¶¶20–21.) Another witness,

who did not attend the party, testified that Mull had told him, "I got to shooting" and "I shot through the door." (*Id.* ¶22.)

The jury found Mull guilty of first-degree reckless homicide. (*Id.* ¶23.) The court sentenced him to twenty-five years' initial confinement followed by ten years extended supervision. (*Id.*) Mull filed a timely postconviction motion, seeking a new trial "in the interests of justice" and on grounds that he had received ineffective assistance from his trial counsel. (*Id.* ¶24.) The circuit court denied his motion without a hearing. (*Id.*)

Mull appealed this ruling to the Wisconsin Court of Appeals, which concluded he was entitled to an evidentiary hearing on his ineffective assistance claims under *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979). (*Id.*) The case was remanded with instructions to take evidence on: (1) trial counsel's failure to file a third-party perpetrator motion naming one of the other three initial suspects as an alternate perpetrator and (2) counsel's failure to object to or move to strike Pugh's hearsay responses to counsel's questions on cross-examination. (*Id.* ¶¶24, 27.)

At the *Machner* hearing, Mull's trial counsel testified about his actions and decision-making processes on both ineffective assistance claims. (*Id.* ¶¶26–27.) Counsel explained that he considered pursuing a third-party perpetrator or *Denny*[3] defense but concluded that difficulties locating witnesses who could support the defense led him to reject it in favor of a reasonable doubt defense. (*Id.* ¶26.) He described how, even with the help of an investigator, he had trouble contacting potential witnesses. (*Id.* ¶¶26, 49.) He also noted several of the witnesses were identified by mere nicknames and would not return phone calls. (*Id.* ¶26.) Counsel noted that the State also had difficulty locating witnesses. (*Id.*) And he explained that the witnesses had provided inconsistent accounts to the police, undermining the value of their statements. (*Id.*) Together, the difficulties in obtaining witnesses to support the theory, coupled with the varying descriptions of the events the witnesses had given the police, led counsel to conclude that pursuing a reasonable doubt defense was the better strategy. (*Id.*)

Regarding Pugh's cross-examination, counsel explained that he believed her answers to his questions were inadmissible hearsay but did not object because the court had rejected his objections to a similar line of questioning during her direct examination. (*Id.* ¶27.) Having had his prior objections overruled, he thought it better not to object further, and instead tried to discredit

---

[3] In *State v. Denny*, 357 N.W.2d 12 (Wis. Ct. App. 1984), the Wisconsin Court of Appeals addressed the evidentiary requirements for a defendant to present third-party perpetrator evidence.

Pugh's testimony by attacking her credibility and questioning her motive for testifying. (*Id.*) Counsel further explained that he did not move to strike Pugh's statement on cross examination because he did not want to bring "too much attention" to that testimony. (*Id.*)

At the conclusion of the *Machner* hearing, the circuit court found trial counsel credible and accepted his testimony. (*Id.* ¶28.) The court then concluded that "the errors asserted by the defense" did not meet the prejudice standard for ineffective assistance of counsel and denied Mull's request for postconviction relief. (*Id.*)

Mull again appealed, and the court of appeals again reversed. (*Id.* ¶29.) The appellate court rejected the lower court's findings that counsel's actions had been the result of strategic decisions and concluded Mull had established that counsel was ineffective both in failing to present a third-party perpetrator defense and "failing to move to strike or move for a mistrial" following Pugh's hearsay testimony on cross-examination. (*Id.*) Based on these determinations, the appellate court ruled that Mull was entitled to a new trial.[4] (*Id.*)

The State then successfully petitioned for review in the Wisconsin Supreme Court, which reversed the court of appeals and reinstated Mull's conviction. (*Id.* ¶30.) Applying *Strickland v. Washington*, 466 U.S. 668 (1984), the Court held that Mull had not shown that trial counsel's strategic decisions were so unreasonable as to constitute a violation of Mull's Sixth Amendment right to counsel. (*Id.* ¶¶30–64.) The Court highlighted the trial court's finding that counsel's explanations for his decisions were credible and emphasized that any analysis of counsel's decisions during trial had to be examined "in the context of the circumstances as they existed at the time he made his decisions." (*Id.* ¶¶34–36, 61 (quoting *State v. Pico*, 914 N.W.2d 95, 104 (Wis. 2018)).)

Regarding Mull's first claim, the Court reviewed "whether trial counsel's strategy to present a reasonable doubt defense was objectively reasonable." (*Id.* ¶42.) The Court credited counsel's statements that he chose to pursue a reasonable doubt defense because witnesses had given conflicting statements about who the shooter was, who had guns at the party, and what outfit the shooter wore, and many of the witnesses had been drinking or smoking marijuana, which interfered with their perception and recall. (*Id.* ¶49.) Given the circumstances trial counsel faced, the court concluded that "drawing attention to discrepancies in the State's case through vigorous cross-examination of witnesses who appeared was an objectively reasonable trial strategy." (*Id.*

---

[4] Mull's interest of justice claim was not addressed by the Wisconsin Court of Appeals. (*See* ECF No. 8-9 ¶29.)

¶51.) The Court also emphasized that counsel had conducted an appropriate pretrial investigation prior to arriving at an ultimate case strategy. (*Id.* ¶52.) Because it determined that counsel's performance was not deficient, the Court declined to address prejudice. (*Id.* ¶53 (citing *Pico*, 914 N.W.2d at 103–04).)

With respect to counsel's handling of Pugh's testimony on cross examination, the Court again credited counsel's testimony at the *Machner* hearing and concluded that his decisions not to object to or move to strike the testimony were reasonable. (*Id.* ¶¶57, 62.) The Court noted that counsel had provided rational explanations for his decision to discredit Pugh and attack the foundation of the messages she received rather than drawing further attention to her testimony. (*Id.* ¶57.) The Court acknowledged that the claim presented a "close call" but concluded that Mull had not demonstrated that trial counsel's decisions were "either irrational or based on caprice" sufficient to overcome the strong presumption that trial counsel's chosen strategy was reasonable. (*Id.* ¶¶62–63 (citing *State v. Breitzman*, 904 N.W.2d 93, 110 (Wis. 2017).) Having determined that trial counsel did not perform deficiently, the Court again declined to address prejudice. (*Id.* ¶64.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. §2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. See *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of Section 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the

Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of Section 2254(d)(1) when the "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a violation under *Strickland*, a habeas petitioner must establish (1) deficient performance by counsel and (2) prejudice. *Id.* at 691–94 (ineffective assistance claimant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Great deference is given to counsel's performance, and the petitioner has a heavy burden to overcome the strong presumption of effective performance. *Id.* at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). This burden requires the petitioner to "establish specific acts or omissions of his counsel which constitute ineffective assistance," to which the reviewing court then "determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *See Coleman*, 318 F.3d at 758 (citing *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000)). To show prejudice, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A court need not address both components; if the defendant makes an insufficient showing on one, the inquiry ends. *Id.* at 697.

On habeas review, federal courts apply AEDPA's deferential standard to any prong of *Strickland* the state court addressed on the merits. *See Thomas v. Clements*, 789 F.3d 760, 765–66 (7th Cir. 2015). Thus, where the state court addressed an ineffective assistance of counsel claim on the merits, this Court's review is "doubly" deferential, and the petitioner must overcome both *Strickland*'s and AEDPA's highly deferential standards. *Harrington*, 562 U.S. at 105. In this context, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## ANALYSIS

Mull challenges the Wisconsin Supreme Court's decision reinstating his conviction. He contends the state court's rejection of his ineffective assistance claims was contrary to, and an unreasonable application of, clearly established federal law as set forth in *Strickland* and its progeny. As explained below, the record confirms that the Wisconsin Supreme Court did not unreasonably apply federal law on either of Mull's claims.[5] Accordingly, his habeas petition will be denied.

I. **The Wisconsin Supreme Court Reasonably Rejected Mull's First Ineffective Assistance Claim.**

Mull contends that the Wisconsin Supreme Court's rejection of his first ineffective assistance claim, related to counsel's decision to pursue a reasonable doubt rather than a *Denny* defense, was contrary to and an unreasonable application of *Strickland* and four subsequent United States Supreme Court cases: *Kimmelman v. Morrison*, 477 U.S. 365 (1986), *Williams v. Taylor*, 529 U.S. 362 (2000), *Wiggins v. Smith*, 539 U.S. 510 (2003), and *Rompilla v. Beard*, 545 U.S. 374 (2005). (ECF No. 11 at 12–16.) As explained above, however, a state court's decision is contrary to federal law under AEDPA only if the court applied a rule that conflicts with the governing federal rule or the state court decided a case differently than the Supreme Court on materially indistinguishable facts. *Bell*, 535 U.S. at 694. Mull does not identify any rule applied by the Wisconsin Supreme Court that is contrary to the *Strickland* standard. Nor does he point to any U.S. Supreme Court case in which a different decision was reached on materially indistinguishable facts.

---

[5] Mull also argues that he was prejudiced by each of counsel's alleged errors. Because the Wisconsin Supreme Court did not violate AEDPA in concluding that counsel's performance was not deficient, the Court need not reach *Strickland*'s prejudice prong. *See Strickland*, 466 U.S. at 697.

Mull instead argues that the Wisconsin Supreme Court unreasonably applied United States Supreme Court precedent, namely *Strickland* and four subsequent cases, *Morrison*, *Williams*, *Wiggins*, and *Rompilla*, in rejecting his claims. (ECF No. 11 at 12–16.) He insists the state court failed to properly "scrutinize counsel's decision-making process," as required by this caselaw, when it determined that his counsel's strategic decisions were reasonable. (*Id.* at 13.) Mull argues the Wisconsin Supreme Court failed to engage with his trial counsel's reasoning process and instead assessed counsel's strategic choices "in a vacuum." (*Id.* at 16.) And he faults the court for focusing "only on the *outcome* of counsel's reasoning process" and failing to consider "the reasonableness of his underlying decision-making *process*." (*Id.* (emphases in original).) These arguments minimize the Wisconsin Supreme Court's analysis while overstating the appropriate level of scrutiny that a reviewing court applies to counsel's strategic decisions.

In *Strickland*, the Supreme Court emphasized that ineffective assistance claims are not a means for a convicted defendant to avoid an adverse jury verdict by second-guessing appointed counsel's strategic decisions. Thus, courts reviewing ineffective assistance claims "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. To prevail on a challenge to counsel's strategic decisions, a defendant must make the high showing "that counsel took an approach that no competent lawyer would have chosen." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021). This standard is further raised on habeas. When a state court has denied an ineffective assistance claim on the merits, a federal court's review on habeas is doubly deferential, requiring the petition to establish that "there is [no] reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Mull's arguments fall well short of this standard.

Neither *Morrison, Williams*, *Wiggins*, nor *Rompilla* alters the basic *Strickland* standard. Nor do these cases suggest that reviewing courts can (or should) apply a different standard of review to second guess an appointed counsel's strategic decisions. *Morrison* was a pre-AEDPA case in which counsel failed to file a suppression motion because he misunderstood basic criminal procedure, took no pretrial discovery, and was oblivious to evidence likely seized in violation of the Fourth Amendment. 477 U.S. at 368–69. The Supreme Court held that counsel's actions were deficient for Sixth Amendment purposes given that his failure to move to suppress was not strategic but the result of a "startling ignorance of the law" that was "contrary to prevailing professional norms." *Id.* at 385. In *Williams*, the Supreme Court held that a habeas petitioner

facing the death penalty was entitled to relief where the record confirmed that his trial counsel failed to prepare for sentencing and did not learn of or introduce a wealth of mitigation evidence. 529 U.S. at 370–73, 391–92, 397–98. The Court rejected counsel's contention that it was an appropriate strategic decision to focus only on the defendant's voluntary confession, noting counsel's wholesale failure to conduct a reasonable investigation into the defendant's background and failure to prepare at all for sentencing until a week before trial. *Id.* at 395–96. *Wiggins* was another death penalty case in which the Court reaffirmed *Williams* and held that counsel's minimal efforts to investigate mitigation evidence before adopting a sentencing strategy warranted habeas relief. 539 U.S. at 524–26. The *Wiggins* Court emphasized that counsel's failure to investigate was the result of "inattention, not reasoned strategic judgment." *Id.* at 526. Finally, in *Rompilla*, the Court concluded that habeas relief was warranted in a death penalty case in which defense counsel had failed to examine a file relating to her client's earlier conviction before his sentencing hearing, despite notice that the prosecution intended to rely on evidence in the file to show that her client had a significant history of felony convictions. 545 U.S. at 383–89. Justice O'Connor cast the deciding vote and emphasized in a concurring opinion that the decision not to obtain the prior conviction files "was not the result of an informed tactical decision." *Id.* at 395.

These cases stand for the proposition that *Strickland*'s strong presumption of reasonable performance does not extend to decisions made based on a misunderstanding of the law or in the absence of a reasonable investigation into the relevant law and facts. *See Wiggins*, 539 U.S. at 522–23 (citing *Williams*, 529 U.S. at 396); *Rompilla*, 545 U.S. at 383–89; *Morrison*, 477 U.S. at 384–85. None of these precedents changes the underlying principle that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *See Wiggins*, 539 U.S. 510 at 521–22 (quoting *Strickland*, 466 U.S. at 690–91).

Mull argues that the Wisconsin Supreme Court unreasonably concluded that his counsel made sufficient investigation into the facts of the case. (ECF No. 11 at 21–22; *see also* ECF No. 8-9 ¶52.) He contends that "counsel never even contemplated investigative avenues that should be common practice in such cases—such as subpoenaing witnesses for trial." (ECF No. 11 at 22.) But this ignores evidence in the record that counsel could not locate witnesses even with the help of an investigator, that the State unsuccessfully subpoenaed several witnesses, and that witnesses' nicknames and lack of available addresses made them difficult to locate. (ECF No. 8-9 ¶¶26, 49.)

Notably, and in contrast to each of the Supreme Court cases he relies on, Mull does not allege any additional facts that his trial counsel could have uncovered with further investigation.

Mull's other arguments amount to little more than after-the-fact critiques of counsel's strategic decision-making and disagreements with the state court's analysis. Neither *Strickland* nor any of the Supreme Court cases that have followed it hold that a court must engage with every potential strategy counsel could have employed. Indeed, *Strickland* directs reviewing courts to do the opposite. *See* 466 U.S. at 689 ("[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Contrary to Mull's contention, the Wisconsin Supreme Court did not improperly assess his trial counsel's strategic decisions "in a vacuum," but instead engaged in a thorough examination of the totality of the circumstances counsel faced and the objective reasonableness of his strategic decisions in light of those circumstances. (*See* ECF No. 8-9 ¶¶38–53.) Because Mull has not shown that the state court's analysis of his counsel's strategic decision unreasonably applied Supreme Court law, his first habeas challenge fails.

## II. The Wisconsin Supreme Court Correctly Applied Strickland in Rejecting Mull's Second Claim.

Mull's second claim on habeas is that the Wisconsin Supreme Court unreasonably applied *Strickland* in rejecting his challenge to his trial counsel's handling of the cross-examination of the murder victim's former girlfriend. Mull argues that the state court's decision was contrary to federal law because it applied an incorrect, more stringent, standard. (ECF No. 11 at 25–29.) He highlights language in which the Wisconsin Supreme Court stated that he had to "demonstrate that trial counsel's decision to refrain from moving to strike or for a mistrial was either irrational or based on caprice in order to overcome the strong presumption that his trial counsel's strategy was reasonable." (*Id.* at 26 (citing ECF No. 8-9 ¶64).) He contends this is not the language the Supreme Court used in *Strickland* but instead a Wisconsin-specific standard that predates and is contrary to *Strickland*'s instruction. (*Id.*) He argues this language creates a "policy of 'super' deference" that would require showing that trial counsel "acted contrary to logic, or in an absurd or unthinking manner[]" for a defendant to demonstrate representation that fell below an objective standard of reasonableness. (*Id.*)

Mull's seizure upon the Wisconsin Supreme Court's wording is a red herring. While the Court used language from a Wisconsin Supreme Court case predating *Strickland*, the differences

in word choice are not material. (*See id.* at 26 (citing *State v. Felton*, 329 N.W.2d 161, 169 (1983) ("We will in fact second-guess a lawyer if the initial guess is one that demonstrates an irrational trial tactic or if it is the exercise of professional authority based upon caprice rather than upon judgment.")).) A state court does not misapply federal law sufficient to warrant habeas relief simply by employing language that stems from its own jurisprudence rather than U.S. Supreme Court caselaw. *See Williams*, 529 U.S. at 405. To prevail on habeas, Mull must show that the rule the state court applied is in fact "contrary to . . . clearly established Federal law." *See* 28 U.S.C. §2254(d)(1). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (2000) (citing Webster's Third New International Dictionary 495 (1976)). Thus, the state court's standard "must be substantially different from the relevant precedent of [the U.S. Supreme Court]." *Id.*

The Wisconsin Supreme Court's decision demonstrates that it did not apply a substantially different standard. *Strickland* requires that courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. To establish deficient performance, a defendant must show that counsel's conduct was unreasonable. *See id.* Black's Law Dictionary defines irrational as "[d]eparting from what is reasonable;" and "utterly illogical or absurd." *Irrational*, Black's Law Dictionary (12th ed, 2024). The Wisconsin Supreme Court's explanation that counsel acts deficiently when a tactical decision is "irrational" or "based on caprice rather than judgment," is consistent with *Strickland*. *See Felton*, 329 N.W.2d at 169. Further, *Strickland* itself recognized that lower courts had formulated performance standards with "minor differences" that were "insignificant." 466 U.S. at 696–97 ("[T]he different formulations are mere variations of the overarching reasonableness standard."). The language employed by the Wisconsin Supreme Court in *Felton* and repeated by that court in this case fits squarely within those acceptable variations. Accordingly, the state court's articulation of the standard applicable to Mull's claim was not inconsistent with federal law.

Semantics aside, Mull also calls the state high court's application of *Strickland* unreasonable. The record refutes this contention. The Wisconsin Supreme Court acknowledged that Mull's claim presented a "close call." (ECF No. 8-9 ¶62.) But it analyzed counsel's explanation for his actions (and inactions) and concluded that "counsel's strategy not to move to strike or move for a mistrial was [not] objectively unreasonable under the circumstances he faced." (*Id.*) The Court noted that counsel had repeatedly been overruled when objecting to Pugh's

testimony on both hearsay and foundation grounds. (*Id.* ¶59.) It also pointed to Pugh's admission on both direct and cross examination that the information she received was "all just rumor." (*Id.* ¶¶59–61.) The Court also observed that counsel had elicited Pugh's hearsay statements while probing why a mysterious sender would provide accusatory information and then immediately block her, questioning that was consistent with counsel's trial strategy to attack the foundation of Pugh's information. (*Id.* ¶61.) This demonstrates a reasonable analysis of counsel's strategic decision-making process.

Mull finally complains that the Wisconsin Supreme Court "flatly refused" to consider his argument that counsel's explanation was unreasonable. (ECF No. 11 at 27.) He points to the dissenting opinion which criticized counsel's "strategic decisions" as mere "post hoc rationalizations." (*Id.* at 28 (quoting ECF No. 8-9 ¶77).) But the record confirms that the Wisconsin Supreme Court reviewed counsel's credible *Machner* hearing testimony and analyzed the explanations he provided in the context in which he was operating at trial. This context included the trial court's prior evidentiary rulings and counsel's decision not to highlight potentially bad testimony by fighting further with the court and to instead try to undercut the basis for the witnesses' testimony. This was a reasonable analysis and consistent with *Strickland* and subsequent Supreme Court precedent. Mull did not show that counsel's approach was one no competent lawyer would have chosen, as required under *Strickland*, and the Wisconsin Supreme Court so concluded. Labelling counsel's sworn explanations at the *Machner* hearing "post hoc rationalizations" is unhelpful. Almost any attempt by trial counsel to explain a strategy that did not result in an acquittal can be disparaged in hindsight as an after-the-fact rationalization. Rarely will counsel have contemporaneous written evidence of his or her strategic thinking from trial. And the Supreme Court has emphasized that *Strickland* is not a license for criminal defendants to second guess their appointed counsel's strategic decisions when those decisions fail to avoid a conviction. *See* 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *see also Dunn*, 594 U.S. at 739 ("[E]ven if there is reason to think that counsel's conduct was far from exemplary, a court still may not grant relief if the record does not reveal that counsel took an approach that no competent lawyer would have chosen." (cleaned up) (citing *Burt v. Titlow*, 571 U.S. 12, 23–24 (2013))); *Harrington*, 562 U.S. at 107 ("Reliance on 'the harsh light of hindsight' to cast doubt on a trial . . . is precisely what *Strickland* and AEDPA seek to prevent." (quoting *Bell*, 535 U.S. at 702)).

A strategic decision made without appropriate investigation into the law and facts is not reasonable, but Mull has not shown that his trial counsel's strategic decisions were the result of counsel's failure to investigate or understand the applicable law.  Instead, Mull argues that counsel's chosen strategy was a poor one.  That is not the standard.  This Court may only grant habeas relief if Mull establishes that there is no reasonable argument that counsel met *Strickland*'s deferential standard.  *See Harrington*, 562 U.S. at 105.  The Wisconsin Supreme Court reasonably applied *Strickland*'s deferential standard.  Accordingly, Mull is not entitled to habeas relief.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability.  A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. §2253(c)(2).  The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Jovan Mull's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner.  *Slack*, 529 U.S. at 484.

Dated at Milwaukee, Wisconsin on September 19, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge